510-07/MEU/LJK
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
HYUNDAI MERCHANT MARINE CO., LTD.
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HYUNDAI MERCHANT MARINE CO., LTD.,

                                        Plaintiff,

  - against –

CLINKER & CEMENTO, S.L.,

                                        Defendant.
-------------------------------------------------------------------x

**JUDGE SWAIN**

**'07-CIV  9497**

<u>**VERIFIED COMPLAINT**</u>

         Plaintiff HYUNDAI MERCHANT MARINE CO., LTD. (hereinafter "HYUNDAI"), by

its attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against Defendant

CLINKER & CEMENTO, S.L. (hereinafter "C & C") alleges upon information and belief as

follows:

         1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of affreightment.    This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333.   Jurisdiction is also proper pursuant to the Court's federal question

jurisdiction pursuant to 28 U.S.C. §1331.   Federal jurisdiction also exists because the action

arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral

Awards codified at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act codified at 9 U.S.C. §1 *et seq.*

    2.   At all times relevant hereto, HYUNDAI was and still is a foreign business entity duly organized and existing under the laws of a foreign country with an address at 66 Jeokseon-dong, Jongno-gu, Seoul, Korea.

    3.   At all times relevant hereto, Defendant C & C was and still is a foreign business entity existing under the laws of a foreign country with an office and place of business in Plaza de la Libertad, 8, 46136 Museros, Valencia, Spain.

    4.   HYUNDAI, as owner, entered into a maritime contract of affreightment with C & C, as charterer, dated July 28, 2006, for the transport of minimum 750,000 MT (up to five percent more at charterer's option) of clinker from Rizhao, China to Dammam, Saudi Arabia with approximately one lifting at approximately 50,000 MT clinker per month. A copy of the contract of affreightment is attached hereto as Exhibit A.

    5.   The contract of affreightment required C & C to pay freight and demurrage in full and on time. Freight was payable under Clause 32 of the contract of affreightment within five banking days after the signing/release of the bill of lading. Demurrage, under the same clause, was to be paid within twenty days after presentation of invoice.

    6.   Freight was not paid either in full or on time by C & C, which constitutes a breach of the contract of affreightment.

    7.   Freight was payable at a rate of $20.00 per MT for the first lifting of 49,764.23 MT of clinker, and C & C was therefore liable for $20.00/MT x 49,764.23 MT − ($12,441.06 (brokerage fee) + $13,733.29 (dispatch amount)) = $969,110.25. Payment in the amount of $933,039.31 was made by C & C, and $36,070.94 remains outstanding with respect to the first

lifting. Freight was payable at a rate of $19.50 per MT for the second lifting of 49,008.00 MT of clinker, amounting to a total of $19.50/MT x 49,008 MT – ($11,945.70 (commission) + $11945.70 (brokerage fees)) = $931,764.60. Payment in the amount of $883,941.18 was made by C & C, and $47,823.42 remains outstanding with respect to the second lifting.

8.    Demurrage was not paid either in full or on time by C & C, which constitutes a breach of the contract of affreightment.

9.    Demurrage was payable under the contract of affreightment at a rate of $22,000 per day pro rata. The first lifting was on demurrage 7.307557 days, and C & C was therefore liable for $22,000/day x 7.307557 days – $2,009.58 (brokerage fees) = $158,756.68. The second lifting was on demurrage for 7.162721 days, and C & C was therefore liable for $22,000/day x 7.162721 days – ($1,969.75 (commission) + $1,969.75 (brokerage fees)) = $153,640.36.

10.    Dead Freight[1] was similarly not paid either in full or on time by C & C, which constituted a breach of the contract of affreightment. Dead freight was payable under the contract of affreightment at a rate of $19.50 per MT of cargo not actually shipped in a particular lifting (keeping in mind the minimum required 50,000 MT per lifting). The second lifting was short 2,493 MT of cargo, and C & C was therefore liable for $19.50/MT x 2,493 MT – ($607.43 (commission) + $607.43 (brokerage fee)) = $47,379.14. A payment in the amount of $7,427.60 was made by C & C, and $39,949.54 remains outstanding.

11. In all, Defendant C & C, in breach of its obligations under the contract of affreightment, failed to pay the following: freight in the sum of $83,894.36; demurrage in the sum of $312,397.05; and dead freight in the sum of $39,949.54, for a total base claim by

---

[1] Dead freight is a sum of money paid by a chareterer who charters a certain amount of tonnage on a vessel but fails to ship the full quantity. The payment constitutes contractual damages for the unoccupied capacity or the vessel.

HYUNDAI against C & C of $436,240.95, no part of which has been paid, though duly demanded.

12. The contract of affreightment, at Clauses 19 and 43, specifically provides for the resolution of disputes by arbitration at London, England, with English law to apply. HYUNDAI specifically reserves its right to arbitrate the merits of its dispute with C & C pursuant to the terms of the contract of affreightment.

13. This action is brought *inter alia* pursuant to 9 U.S.C. §8 in order to obtain security for HYUNDAI'S claims made or to be made in arbitration in London, England under English law, as agreed by the parties.

14. As a regular feature of English law and arbitration, attorneys fees are awarded to the successful litigant, along with costs, disbursements and the cost of the arbitration, all of which constitutes a part of the Plaintiff's claim and the amount sued for herein. HYUNDAI estimates that it will incur approximately $100,000 in awardable attorneys fees, disbursements, and costs of the arbitration.

15. Interest is also typically awarded under English law and arbitration, regularly at the rate of LIBOR plus 1-2% compounded quarterly (approximately 8%). HYUNDAI estimates that it will be awarded approximately $35,960.28 in interest per annum. The typical time taken from commencement of arbitration through entry of judgment on an award is approximately three years. Accordingly, HYUNDAI estimates that it will be awarded approximately $117,018.06 in interest, which also constitutes a part of the Plaintiff's claim and the amount sued for herein.

16. In all, the claim for which HYUNDAI sues in this action, as near as presently may be estimated, totals $653,259.01 no part of which has been paid by C & C. HYUNDAI specifically

reserves its right to amend this figure and to seek an increase in the amount of security should such sum appear to be insufficient to fully secure HYUNDAI.

17. Upon information and belief, and after investigation, Defendant C & C cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due to, from, or for the benefit of Defendant C & C (hereinafter, "ASSETS"), including but not limited to "ASSETS" at, being transferred through, or being transferred and/or wired to or from banking institutions or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein.

**WHEREFORE**, Plaintiff HYUNDAI prays:

a.    That process in due form of law according to the practice of this Court issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged, failing which a default will be taken against it in the principal amount of $436,240.95 plus interest, costs and attorneys fees;

b.    That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of $653,259.01, be restrained and attached, including but not limited to any cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire, sub-charter hire, and/or any other property of, belonging to, due to, from, or for the benefit of

Defendant (collectively "ASSETS"), including but not limited to such "ASSETS" as may be held, received or transferred in its own name or as may be held, received or transferred for its benefit at, through, or within the possession, custody or control of such banking institutions and/or any such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.    That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary; and,

d.    For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       October 24, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff
HYUNDAI MERCHANT MARINE CO., LTD.

By:    _____

Michael E. Unger (MU 0045)
Lawrence J. Kahn (LK 5215)
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                     ) ss.:
County of New York   )

MICHAEL E. UNGER, being duly sworn, deposes and says as follows:

1.      I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client.

3.      The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

_____
Michael E. Unger

Sworn to before me this
24th day of October, 2007

_____
Notary Public

MELISSA COLFORD
Commissioner of Deeds
City of New York-No. 5-1692
Certificate Filed in New York
Commission Expires 4/1/08